## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIE HUFF ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 18-CV-22-RAW |
| ) | |
| 1) CITY OF EUFAULA, ) | |
| OKLAHOMA; ) | Jury Trial Requested |
| 2) EUFAULA CHIEF OF POLICE ) | Attorney Lien Claimed |
| DON MURRAY; ) | |
| 3) EUFAULA POLICE OFFICER ) | |
| CASEY TORIX; ) | |
| 4) OKLAHOMA HIGHWAY ) | |
| PATROLMAN CHRISTOPHER ) | |
| REEVES; ) | |
| 5) McINTOSH COUNTY SHERIFF ) | |
| KEVIN LEDBETTER; ) | |
| ) | |
| **Defendants.** ) | |

## SECOND AMENDED COMPLAINT

**COMES NOW** the Plaintiff, Julie Huff, by and through her attorney of record, J. Derek Ingle of BOETTCHER DEVINNEY INGLE & WICKER, PLLC, and for her cause of action against the Defendants, alleges and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff brings this action under 42 U.S.C. § 1983.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.

3. Venue is proper under 28 U.S.C. § 1391(b) because the events that gave rise to this action occurred in this judicial district.

1

## PARTIES

4. The Plaintiff, Julie Huff, is a resident of the State of Oklahoma.

5. Defendant City of Eufaula is a municipality located in McIntosh County, State of Oklahoma.

6. Defendant Don Murray, at all times relevant hereto, was the Chief of Police of the City of Eufaula, and was acting under color of state law. On information and belief, he is a resident of McIntosh County, State of Oklahoma.

7. Defendant Casey Torix, at all times relevant hereto, was a law enforcement officer employed by the City of Eufaula, and was acting under color of state law. On information and belief, he is a resident of McIntosh County, State of Oklahoma.

8. Defendant Christopher Reeves, at all times relevant hereto, was a law enforcement officer employed by the Oklahoma Highway Patrol, and was acting under color of state law. On information and belief, he is a resident of Muskogee County, State of Oklahoma.

9. Defendant Kevin Ledbetter, at all times relevant hereto, was the Sheriff of McIntosh County, and was acting under color of state law. On information and belief, he is a resident of McIntosh County, State of Oklahoma.

## STATEMENT OF FACTS

10. On January 21, 2016, Cedric Lamont Norris, a convicted burglar and robber who should have been in the custody of the Oklahoma Department of Corrections, entered the Bank of Eufaula ("the Bank") in Eufaula, McIntosh County, Oklahoma, armed with a pistol.

11. After entering the Bank, Norris walked into the office of the Bank's President, Randall Charles Peterson, and shot Mr. Peterson. Mr. Peterson died of gunshot wounds on the floor of his office.

12. After shooting Mr. Peterson, Norris approached the Bank's tellers, brandishing the gun he had used to shoot Mr. Peterson, and took a fistful of cash from a bank teller. He then approached a bank employee, Plaintiff Betty Carol Howell, at her desk and demanded that she accompany him as his hostage in leaving the bank.

13. Ms. Howell's brother, Francis Marion Farrow, who was also employed at the Bank, intervened and told Norris that Ms. Howell would not accompany him. Norris then fired his pistol at Mr. Farrow's head. Mr. Farrow dove to the floor and narrowly avoided being shot.

14. Norris then repeated his demand that Ms. Howell leave the bank as his hostage. When Ms. Howell refused, Norris shot Mrs. Howell in her abdomen.

15. Norris then approached Plaintiff Julie Huff, a business invitee of the Bank. Ms. Huff was seated at Ms. Howell's desk. Norris demanded Ms. Huff drive his vehicle which he had earlier stolen. Ms. Huff, afraid that she would also be killed if she refused, complied with Norris' demand. Norris then left the Bank with Ms. Huff as his hostage.

16. Mr. Norris forced Ms. Huff to drive this vehicle several miles. Mr. Norris was in the passenger seat with a gun pointed at Ms. Huff directing her where to drive.

17. The vehicle was followed by several law enforcement vehicles including (but not limited to) vehicles driven/occupied by Oklahoma Highway Patrolman Christopher Reeves, Eufaula Police Officer Casey Torix and Deputies with the McIntosh Sheriff's office. During the course of the chase, all law enforcement personnel were informed that Ms. Huff was a hostage. Eventually the law enforcement personnel were able to disable the stolen vehicle.

18. After the vehicle was disabled, Ms. Huff exited the vehicle and began running into a nearby field. Mr. Norris also exited the stolen vehicle and began exchanging gunfire with law enforcement. Mr. Norris then caught up to Ms. Huff and put his arm around her neck and began

3

using her as a human shield. He held her in front of him, in full view of law enforcement personnel. Despite all law enforcement personnel being informed that Ms. Huff was a hostage, they continued to fire their weapons including at least one gun being an AR15. They fired directly at Ms. Huff and through her at Mr. Norris, disregarding her personal safety.

19. During the course of the shootout, Ms. Huff was shot by law enforcement officers approximately nine (9) separate times. Ms. Huff was shot by members of the Oklahoma Department of Public Safety OHP, City of Eufaula Police Department and the McIntosh County Sheriff's Department including (but not limited to) Oklahoma Highway Patrolman Christopher Reeves and Eufaula Police Officer Casey Torix. Ms. Huff was shot from her head down to her legs. She also sustained multiple gunshot wounds in her torso. The law enforcement personnel literally shot through an innocent hostage, Ms. Huff, in an effort to kill Mr. Norris. Ms. Huff was severely wounded and Mr. Norris was eventually killed. All of the approximately nine (9) bullets that severely injured Ms. Huff came from law enforcement personnel. Not one of these bullets that injured Ms. Huff came from Norris.

20. The law enforcement officers intentionally targeted Ms. Huff, the hostage used as a human shield for the purpose of apprehending the robber, Mr. Norris. The law enforcement officers had sufficient time to focus on their target before pulling the trigger and deliberate whether to shoot at or through the hostage.

## **CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Excessive force in violation of Fourth Amendment**
(Against Defendant Torix, Oklahoma Highway Patrolman Christopher Reeves, and unknown Sheriff's deputies)

Plaintiff incorporates preceding paragraphs as if fully set forth herein.

21. At the time of this incident, Plaintiff has a clearly established constitutional right to be free from unreasonable search and seizure, the use of excessive force, and the right to bodily integrity.

22. Any reasonable law enforcement officer knew or should have known of these rights as they were clearly established at the time.

23. Defendants Oklahoma Highway Patrolman Christopher Reeves and Torix were fully aware that the Plaintiff was being held as a hostage by Cedric Norris and that she was being used as a human shield. Nevertheless, Defendants Reeves and Torix intentionally fired a lethal weapon in the direction of Mr. Norris even though the Plaintiff was in the line of fire.

24. Defendants Reeves and Torix's actions were objectively unreasonable in light of the facts and circumstances confronting him and violated the Constitutional rights of the Plaintiff.

25. Defendants Reeves and Torix's actions were malicious and/or involved reckless, callous, and deliberate indifference to the Plaintiff's federally protected rights.

26. The force used constituted deadly force in that it could have caused death and did cause serious bodily injury.

27. The Defendant at all times relevant herein was acting pursuant to municipal custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

28. The same allegations apply to sheriff's deputies not named as individual Defendants.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Substantive due process in violation of Fourteenth Amendment**
(Against Defendants Reeves and Torix and unknown Sheriff's deputies)

Plaintiff incorporates preceding paragraphs as if fully set forth herein.

29. At the time of this incident, Plaintiff has a clearly established constitutional right to be free from unreasonable search and seizure, the use of excessive force, and the right to bodily integrity.

30. Any reasonable law enforcement officer knew or should have known of these rights as they were clearly established at the time.

31. Defendants Reeves and Torix were fully aware that the Plaintiff was being held as a hostage by Cedric Norris and that she was being used as a human shield. Nevertheless, Defendants Reeves and Torix intentionally fired a lethal weapon in the direction of Mr. Norris even though the Plaintiff was in the line of fire.

32. Defendants Reeves' and Torix's actions were objectively unreasonable in light of the facts and circumstances confronting him and violated the Constitutional rights of the Plaintiff.

33. Defendant Reeves' and Torix's actions were malicious and/or involved reckless, callous, and deliberate indifference to the Plaintiff's federally protected rights. The force used by the Defendants shocks the conscience and violates the Constitutional rights of the Plaintiff.

34. The force used constituted deadly force in that it could have caused death and did cause serious bodily injury.

35. The Defendant at all times relevant herein was acting pursuant to municipal custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in his actions pertaining to Plaintiff.

36. The same allegations apply to sheriff's deputies not named as individual Defendants.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Inadequate training**
(Against Defendants City of Eufaula, Murray, and Ledbetter)

Plaintiff incorporates preceding paragraphs as if fully set forth herein.

37. The City of Eufaula, through its Chief of Police, Don Murray, is responsible for training officers of the City Police Department. Kevin Ledbetter, as Sheriff of McIntosh County, is responsible for training deputy sheriffs.

38. The Defendants failed to provide adequate training for law enforcement officers in the handling of hostage situations. In particular, rules of engagement when hostages were used as human of shields were grossly inadequate.

39. This failure to train resulted from a deliberate, conscious choice by the Defendants and exhibits a deliberate indifference to the safety of members of the public who are taken hostage by criminal offenders. Indeed, Chief Murray has stated publically that his officers were "unprepared" to deal with is incident involving Mrs. Huff.

40. The Defendants intentionally chose to give priority to the apprehension or liquidation of a criminal offender over the right to be free of excessive force and to be secure in their bodily integrity.

41. Harm to the Plaintiff was a foreseeable and direct result of the Defendants' conduct. Defendants acted with conscious disregard for a great risk of serious bodily harm to members of the public held hostage by criminal offenders.

42. Plaintiff as a hostage was placed at greater risk of serious bodily harm as a result of Defendants' action.

43. The use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal. Law enforcement officers frequently encounter hostage situations and the use of hostages as human shields is always a possibility.

7

44. The inadequate training demonstrates a deliberate indifference on the part of the Defendants towards hostages such as Ms. Huff with whom the law enforcement officers come into contact. Indeed, Chief Murray has stated publically that he and his officers were "unprepared" to handle this very incident.

45. There is a direct causal link between the constitutional deprivation suffered by the Plaintiff and the inadequate training provided by the Defendants. If law enforcement officers had been trained to hold their fire when a hostage was in the line of fire, Ms. Huff would not have been injured.

## DAMAGES

46. Ms. Huff sustained horrific injuries in this incident. The emergency personnel on the scene initially thought she had died. She was rushed to an Emergency Room in Muskogee and then Tulsa. Ms. Huff was initially hospitalized for many weeks. She underwent many surgeries for her injuries during her initial hospitalization. Since then, she has had several follow up surgeries requiring further extended hospitalizations.

47. Before this terrible incident, Ms. Huff was gainfully employed as a nurse. She can no longer work as a result of her severe injuries.

48. Ms. Huff has sustained permanent injuries, severe scarring, disfigurement, medical expenses, pain and suffering, loss of income, loss of earning potential, anxiety and emotional distress. She will continue to need treatment and incur medical expenses related to this horrible incident for the rest of her natural life.

49. Defendants' actions were also reckless and without regard to the rights of others. Plaintiff is entitled to punitive damages from these Defendants.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff requests the following relief from the Court:

1. Actual and compensatory damages to make the Plaintiff whole;

2. Punitive damages against the Defendants sufficient to punish them and to deter further wrongdoing;

3. Attorneys' fees, litigation expenses, costs, pre- and post-judgment interest, as provided by law; and

4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

By: */s/ J. Derek Ingle*
J. DEREK INGLE, OBA# 16509
BOETTCHER DEVINNEY INGLE & WICKER
2202 E. 49th Street, Suite 600
Tulsa, OK 74105
(918) 728-6500 - Telephone
(539) 664-4129 - Facsimile
Derek.Ingle@BDIWlaw.com
*Counsel for Plaintiff Julie Huff*

**Certificate of ECF Filing / Service**

I certify on the 31st day of August, 2018, I caused to be filed electronically the foregoing document to the Clerk of the Court using the ECF System.

*/s/ J. Derek Ingle*