IN THE DISTRICT COURT OF McINTOSH COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| JULIE HUFF and TERRY WADE HUFF, )<br><br>Plaintiffs, )<br>)<br>v. )<br>)<br>1) CITY OF EUFAULA, OKLAHOMA; )<br>2) EUFAULA CHIEF OF POLICE DON MURRAY;<br>3) EUFAULA POLICE OFFICER CASEY TORRIX;<br>4) BOARD OF COUNTY COMMISSIONERS FOR McINTOSH COUNTY, OKLAHOMA;<br>5) McINTOSH COUNTY SHERIFF KEVIN LEDBETTER;<br>6) DEPARTMENT OF PUBLIC SAFETY, STATE OF OKLAHOMA;<br>7) OHP CHIEF RICKY ADAMS;<br>8) OHP PATROLMAN CHRISTOPHER REEVES;<br>9) BOARD OF COUNTY COMMISSIONERS FOR CREEK COUNTY, OKLAHOMA;<br>10) CREEK COUNTY DISTRICT ATTORNEY MAX COOK;<br>11) CREEK COUNTY COURT CLERK AMANDA VANORSDOL;<br>12) CREEK COUNTY SHERIFF BRET BOWLING;<br>13) BOARD OF COUNTY COMMISSIONERS FOR TULSA COUNTY, OKLAHOMA;<br>14) TULSA COUNTY DISTRICT ATTORNEY STEVE KUNZWEILER;<br>15) TULSA COUNTY COURT CLERK DONALD NEWBERRY;<br>16) TULSA COUNTY SHERIFF VIC REGALADO; | Case No. CJ-17-89<br><br>Judge Pratt<br>Jury Trial Requested<br>Attorney Lien Claimed |

EXHIBIT 2

17) DEPARTMENT OF CORRECTIONS, STATE OF OKLAHOMA;
18) DIRECTOR JOE ALLBAUGH;

    Defendants.

## PETITION

COME NOW the Plaintiffs Julie Huff and Terry Huff, by and through their attorney of record, J. Derek Ingle of E. Terrill Corley & Associates, and for their cause of action against the Defendants alleges and states as follows:

### Jurisdiction and Venue

1. The Plaintiffs Julie Huff and Terry Wade Huff, are residents of the State of Oklahoma.

2. Defendants, Creek County, Tulsa County, McIntosh County, City of Eufaula, Department of Public Safety and Department of Corrections, are each political subdivisions of the State of Oklahoma. Plaintiffs' claims arise (in part) out of the Oklahoma Governmental Tort Claims Act, 51 O.S.§§ 151 *et seq.*, wherein the State of Oklahoma waives the sovereign immunity of the State and its political subdivisions for loss resulting from tortious conduct for which private persons or entities would be liable for money damages.

3. On information and belief, Defendants Don Murray, Casey Torrix, and Kevin Ledbetter are residents of McIntosh County, State of Oklahoma.

4. On information and belief, Defendant Ricky Adams is a resident of Oklahoma County, State of Oklahoma.

5. On information and belief, Defendant Christopher Reeves is a resident of Muskogee County, State of Oklahoma.

6. On information and belief, Defendants Max Cook, Amanda Vanorsdol and Bret Bowling are residents of Creek County, State of Oklahoma.

7. On information and belief, Defendants Steve Kunzweiler, Donald Newberry and Vic Regalado are residents of Tulsa County, State of Oklahoma.

8. On information and belief, Defendant Joe Allbaugh is a resident of Oklahoma County, State of Oklahoma.

9. Plaintiff presented her claims to all Governmental Entity Defendants via letters dated January 18, 2017 (Exhibit 1) and via amended letters dated January 20, 2017 (Exhibit 2) in compliance with 51 O.S. § 156. The County Defendants and City of Eufaula did not respond at all, and therefore, Plaintiffs' claims against them were deemed denied on April 18, 2017 pursuant to 51 O.S. § 157. On January 24, 2017, the State Defendants (Department of Corrections and Department of Public Safety) requested further information. Exhibit 3. Plaintiffs complied with this request on or about February 7, 2017. Exhibit 4. Therefore, the ninety (90) period for the State Defendants to respond expired on or about May 8, 2017. Exhibit 5.

10. The deadline for filing suit against the **County Defendants** and the **City of Eufaula** is **October 15, 2017**. The deadline for filing suit against the **State Defendants** is **November 4, 2017**.

11. This Court is the proper venue for this action, pursuant to 51 O.S. § 163(A), because Plaintiffs' causes of action arose in McIntosh County, Oklahoma.

3

## Facts Common to All Claims

12. In 2005, Cedric Lamont Norris was an inmate in custody of the Texas Department of Criminal Justice. Norris was then serving a sentence for burglaries committed in Dallas County, Texas. In that same year, Norris was extradited to Oklahoma to face trial on multiple charges of robbery by force in Tulsa and Creek Counties.

13. In April of 2006, Norris was convicted of robbery by force in Tulsa County and sentenced to 10 years in the custody of the Oklahoma Department of Corrections. In December of 2006, Norris was convicted of robbery by force in Creek County and sentenced to 60 years, to run concurrently with his 10-year sentence in Tulsa County, in the custody of the Oklahoma Department of Corrections.

14. In January of 2007, Norris was returned to the custody of the Texas Department of Criminal Justice to serve the remainder of his sentence in Texas. At that time, Norris remained under sentences by Tulsa and Creek Counties to be incarcerated by Oklahoma's Department of Corrections for a total of 60 years. With Norris in custody in Texas, but under sentence to serve additional time in Oklahoma upon his release from custody in Texas, Defendants had a duty to take and complete those measures required to ensure that Norris was returned, upon his release in Texas to Oklahoma to serve his term of incarceration in Oklahoma.

15. Tulsa and Creek Counties had a duty to adhere to procedures and policies to ensure that a felon convicted there but returned to the custody of another state would be returned to the custody of the Department of Corrections upon release from the custody of that other state. Tulsa and Creek Counties did not follow policies or procedures with respect to Norris.

16. Likewise, the Department of Corrections had a duty to follow policies and procedures to ensure that a felon convicted in the State of Oklahoma but returned to the custody

4

of another state would be returned to the custody of the Department of Corrections upon release from the custody of that other state. Department of Corrections did not follow policies and procedures with respect to Norris.

17. Neither Tulsa County nor Creek County delivered to the Texas Department of Criminal Justice completed documentation, nor made adequate efforts, to ensure Norris's return to Oklahoma to serve his sentences there upon his release from custody in Texas. In December of 2006, Tulsa County delivered to the Texas Department of Criminal Justice an incomplete Form IX Prosecutor's Report of Disposition of Charges, promulgated pursuant to the Interstate Agreement on Detainers. Tulsa County did not include with this Form IX the required judgment/commitment documents (*i.e.* Norris's Judgment and Sentence from his Tulsa County conviction) that would have ensured Norris's return to Oklahoma to serve his Tulsa County sentence. Creek County delivered to the Texas Department of Criminal Justice no documentation at all to ensure that Norris was returned to Oklahoma to serve his Creek County sentence.

18. The Oklahoma Department of Corrections also failed to take any action to ensure Norris was sent back to Oklahoma upon completion of his sentence in Texas, despite Norris being sentenced to that Department's custody for a total term of 60 years.

19. Although Tulsa County, Creek County, and Department of Corrections had all failed to take appropriate action to ensure that Norris would be returned to Oklahoma once he was released from custody in Texas, Norris affirmatively requested he be returned to custody in Oklahoma to serve his sentences. In July of 2010, while still in custody of the Texas Department of Criminal Justice, Norris delivered to Creek County a handwritten letter, which he styled a "Motion to Execute Judgment." In that letter, Norris reminded Creek County that he "was sentenced to '60' sixty years in Dec. 2006 and upon completion of [his] '2' two sentences in the

State of Texas, Creek County Oklahoma was supposed to had me brought back to Oklahoma to begin '60' sixty year term in Oklahoma Department of Corrections." Norris further advised Creek County, "*[h]owever, Texas refused to send me to Creek County, because Creek County has failed to place a detainer with the Department of Justice in Texas Department of Corrections. I have been advised that I cannot be transported to Oklahoma prison until Creek County placed a detainer to have me brought Oklahoma*". Regarding this detainer, Norris explained, "*This should have already been done by Creek County. I'm simply requesting that Creek County place detainer so Mr. Norris can start his sentence in Oklahoma...*". Still, Creek County took no action to ensure Norris's return to custody in Oklahoma following his release from custody in Texas.

20. Because neither Creek County nor Tulsa County delivered to Texas required paperwork nor made adequate efforts to ensure Norris's return to Oklahoma, and because the Department of Corrections took no action to ensure Norris's return to custody in Oklahoma, Norris was released from the custody of the Texas Department of Criminal Justice in March 2012 and not returned to Oklahoma for incarceration in the State.

21. On January 21, 2016, a date on which he should have been in the custody of the Oklahoma Department of corrections, Norris entered the Bank of Eufaula ("the Bank") in Eufaula, McIntosh County, Oklahoma, armed with a pistol.

22. After entering the Bank, Norris walked into the office of the Bank's President, Randall Charles Peterson, and shot Mr. Peterson. Mr. Peterson died of gunshot wounds on the floor of his office.

23. After shooting Mr. Peterson, Norris approached the Bank's tellers, brandishing the gun he had used to shoot Mr. Peterson, and took a fistful of cash from a bank teller. He then

6

approached a bank employee, Plaintiff Betty Carol Howell, at her desk and demanded that she accompany him as his hostage in leaving the bank.

24. Ms. Howell's brother, Francis Marion Farrow, who was also employed at the Bank, intervened and told Norris that Ms. Howell would not accompany him. Norris then fired his pistol at Mr. Farrow's head. Mr. Farrow dove to the floor and narrowly avoided being shot.

25. Norris then repeated his demand that Ms. Howell leave the bank as his hostage. When Ms. Howell refused, Norris shot Ms. Howell in her abdomen.

26. Norris then approached Plaintiff Julie Huff, a business invitee of the Bank. Ms. Huff was seated at Ms. Howell's desk. Norris demanded Ms. Huff drive his vehicle which he had earlier stolen. Ms. Huff, afraid that she would also be killed if she refused, complied with Norris' demand. Norris then left the Bank with Ms. Huff as his hostage.

27. Mr. Norris forced Ms. Huff to drive this vehicle several miles. Mr. Norris was in the passenger seat with a gun pointed at Ms. Huff directing her where to drive.

28. The vehicle was followed by several law enforcement vehicles including (but not limited to) vehicles driven/occupied by Oklahoma Highway Patrolman Christopher Reeves, Eufaula Police Officer Casey Torrix and Deputies with the McIntosh Sheriff's office. During the course of the chase, all law enforcement personnel were informed that Ms. Huff was a hostage. Eventually the law enforcement personnel were able to disable the stolen vehicle.

29. After the vehicle was disabled, Ms. Huff exited the vehicle and began running into a nearby field. Mr. Norris also exited the stolen vehicle and began exchanging gunfire with law enforcement. Mr. Norris then caught up to Ms. Huff and put his arm around her neck and began using her as a human shield. Despite all law enforcement personnel being informed that Ms. Huff was a hostage, they continued to fire their weapons including at least one gun being an AR15.

7

30. During the course of the shootout, Ms. Huff was shot by law enforcement officers approximately nine (9) separate times. Ms. Huff was shot by members of the Oklahoma Department of Public Safety OHP, City of Eufaula Police Department and the McIntosh County Sheriff's Department including (but not limited to) OHP Christopher Reeves and Eufaula Police Officer Casey Torrix. Ms. Huff was shot from her head down to her legs. She also sustained multiple gunshot wounds in her torso. The law enforcement personnel literally shot through an innocent hostage, Ms. Huff, in an effort to kill Mr. Norris. Ms. Huff was severely wounded and Mr. Norris was eventually killed. All of the approximately nine (9) bullets that severely injured Ms. Huff came from law enforcement personnel. Not one of these bullets that injured Ms. Huff came from Norris.

## Claims for Damages

31. Defendants Department of Public Safety OHP, City of Eufaula Police Department and McIntosh County Sheriff's Department along with Christopher Reeve and Casey Torrix (both in their official and individual capacities) are liable for the negligent acts which severely injured Plaintiff Julie Huff. Particularly, the law enforcement personnel including (but not limited to) Christopher Reeve and Casey Torrix negligently shot Ms. Huff multiple times while she was an innocent hostage causing her horrific injuries.

32. Defendants Department of Public Safety OHP, City of Eufaula Police Department, and McIntosh County Sheriff's Department along with Christopher Reeve, Casey Torrix, Ricky Adams, Don Murray and Kevin Ledbetter (all in their official and individual capacities) violated Ms. Huff's rights secured and protected by the Oklahoma Constitution when Ms. Huff was shot multiple times while she was an innocent hostage causing her horrific injuries.

8

33. Defendants Department of Public Safety OHP, City of Eufaula Police Department and McIntosh County Sheriff's Department along with OHP Chief Ricky Adams, Eufaula Police Chief Don Murray and McIntosh County Sheriff Kevin Ledbetter (all in their official and individual capacities) negligently trained and supervised their law enforcement personnel and failed to ensure that their law enforcement personnel adhered to proper policies which directly led to her being shot multiple times while she was an innocent hostage causing her horrific injuries.

34. Defendants Creek County, Tulsa County and Department of Corrections along with Max Cook, Amanda Vanorsdol, Bret Bowling, Steve Kunzwieler, Donald Newberry, Vic Regalado and Joe Allbaugh (all in their official and individual capacities) failed to take the actions necessary to ensure that Norris was in the custody of the Oklahoma Department of Corrections and serving the sentences imposed upon him in Creek County and Tulsa County. As a result, Plaintiff Julie Huff was kidnapped by Norris and shot multiple times while she was an innocent hostage and severely and greviously injured as a direct result of these Defendants actions.

## Damages

35. Ms. Huff sustained horrific injuries in this incident. The emergency personnel on the scene initially thought she had died. She was rushed to an Emergency Room in Muskogee and then Tulsa. Ms. Huff was initially hospitalized for many weeks. She underwent many surgeries for her injuries during her initial hospitalization. Since then, she has had several follow up surgeries requiring further extended hospitalizations.

36. Before this terrible incident, Ms. Huff was gainfully employed as a nurse. She can no longer work as a result of her severe injuries.

37. Ms. Huff has sustained permanent injuries, severe scarring, disfigurement, medical expenses, pain & suffering, loss of income, loss of earning potential, anxiety and emotional

distress. She will continue to need treatment and incur medical expenses related to this horrible incident for the rest of her natural life.

38. Plaintiff Terry Huff is the husband of Julie Huff. He has suffered loss of consortium damages directly caused by the Defendants' actions.

39. Defendants' actions were also reckless and without regard to the rights of others. Plaintiffs are entitled to punitive damages from these Defendants.

WHEREFORE, premises considered, Plaintiff prays for judgment against the Defendants for damages in an amount in excess of $75,000.00, plus court costs, prejudgment interest, post-judgment interest, attorney fees and all other and further relief this Court deems equitable and just.

Respectfully submitted,

*/s/ J. Derek Ingle*

J. Derek Ingle, OBA# 16509
E. TERRILL CORLEY & ASSOCIATES
1809 East 15th Street
Tulsa, Oklahoma 74104-4610
(918) 744-6641 - telephone
(918) 747-4921 - facsimile
derek@corley-associates.com

ATTORNEYS FOR PLAINTIFF

10